THE BROOKLYN CITY RAILROAD COMPANY AND BROOKLYN & QUEENS TRANSIT CORPORATION, AS SUCCESSOR BY MERGER AND CONSOLIDATION TO THE BROOKLYN CITY RAILROAD COMPANY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 20353.   Promulgated November 16, 1932.

*R. B. Goodell, Esq.,* and *S. B. Olney, Esq.,* for the petitioners.
*Chester A. Gwinn, Esq.,* for the respondent.

### OPINION.

TRAMMELL: This is a proceeding for the redetermination of a deficiency in income and profits taxes determined by the respondent for the *calendar year* 1921 in the amount of $154,227.38. In the " amended and supplemental petition " it is alleged that the respondent erred in his determination of the deficiency " in that he has determined the income and excess profits tax without reference to the established fiscal year of The Brooklyn City Railroad Company and instead of determining the tax for the twelve months ending June 30, 1921, has based his determination upon the return filed by The Brooklyn City Railroad for the twelve months ending December 31, 1921, and asserted a deficiency for that period." It is also alleged in said petition (2) that the respondent erred in failing to allow as a deduction from gross income a reasonable amount for exhaustion, wear and tear of the physical properties of said railroad company, and (3) in denying an application for special assessment of the profits tax; all of said allegations of error being denied by the respondent.

Upon agreement of counsel that decision for the petitioners on the first issue above set out would render the second and third issues academic, and in such event it would become unnecessary to consider or decide in this case said last mentioned issues, the hearing was limited to the first issue.

The petitioners by this appeal specifically request " a redetermination of the deficiency set forth by the Commissioner of Internal Revenue in his notice of deficiency  *  *  *  dated August 6, 1926," which deficiency is for the *calendar year* 1921, but the amended petition concludes with the prayer, among other things, that this Board " direct the Commissioner, pursuant to Rule 50, to redetermine the tax either for the fiscal year ending June 30, 1921, or for the

calendar year ending December 31, 1921, whichever the Board may determine to be the taxable year of The Brooklyn City Railroad Company * * *."

At the hearing the respondent moved to dismiss the appeal as to " any year other than the calendar year 1921," on the ground that the Board has no jurisdiction to redetermine the tax liability of the petitioners for any year other than said calendar year. The motion was taken under consideration for decision upon submission of the case.

The Revenue Act of 1926 provides in section 274 (g) that, in redetermining a deficiency in respect of any taxable year, this Board shall consider such facts with relation to the taxes for other taxable years as may be necessary to redetermine the amount of such deficiency, but in so doing shall have no jurisdiction to determine whether or not the tax for any other taxable year has been overpaid or underpaid.

The deficiency which we are called upon to redetermine in the instant case is for the *calendar year* 1921, and the issue raised by the parties in that connection, as hereinabove set out, can be decided by us within the jurisdictional limitations of the statute. The petitioners have not appealed from the determination of a deficiency for any other taxable year, and hence it is unnecessary to dismiss this appeal in respect of a year not before us. Respondent's motion accordingly is denied.

The original petition in this proceeding was filed in 1926 by The Brooklyn City Railroad Company, hereinafter for convenience called the railroad company, which company was thereafter in 1929 merged with the Brooklyn & Queens Transit Corporation, and the latter corporation now appears as copetitioner.

The parties stipulated the following facts:

The Brooklyn City Railroad Company was organized as a corporation under the laws of the State of New York on December 16, 1853.

The Brooklyn City Railroad Company at all times prior to the year 1930 filed its Federal income tax returns upon the basis of the calendar year. It never at any time prior to 1929 filed an income tax return for a period of less than a year, nor did it ever request or receive permission of the Commissioner of Internal Revenue to file its return upon the calendar year basis or to change from a calendar year basis to a fiscal year basis.

The consolidated net taxable income of The Brooklyn City Railroad Company as determined by the Commissioner for the twelve months ending December 31, 1920 and 1921, was as follows:

12 months ending December 31, 1920, a loss of $662,633.98.

12 months ending December 31, 1921, a net income of $1,624,435.55.

The Brooklyn City Railroad Company filed on or about March 15, 1922, a consolidated income and profits tax return covering the twelve months ending December 31, 1921; said return showed income tax for that period of $125,905.15; said amount was assessed against The Brooklyn City Railroad Company and paid by it.

The only inventories taken by The Brooklyn City Railroad Company are of its materials and supplies, of which a running or continuous inventory is kept, which enters into the computation of net income for tax purposes only through deductions for costs of operation and maintenance.

In addition to the stipulated facts the evidence shows that in 1890, pursuant to a statute of the State of New York, the executive committee and board of directors of the railroad company adopted resolutions fixing its fiscal year as the year ending June 30, and the by-laws of the corporation were amended accordingly. The fiscal year so fixed and adopted by the railroad company was not changed prior to the year 1929.

From and after 1890, the said railroad company made annual reports on the basis of the fiscal year ended June 30 to the state regulatory body, designated variously as the Railroad Commission, Transit Commission and Public Service Commission. The annual reports of the railroad company to its stockholders, including income statements and balance sheets, were during said years all on the basis of a fiscal year ending June 30. Also, the books of account were closed and all possible adjustments made each year as of June 30.

In addition to the annual reports the railroad company made quarterly reports to the Transit Commission of certain of its operating figures. In connection with the rendering of those reports certain operating accounts were balanced quarterly, and the balances carried to profit and loss, but the profit and loss account was balanced annually on June 30. In making the reports above mentioned, the railroad company stated that its basis of accounting was the fiscal year ending June 30.

After introduction of much of the evidence offered at the hearing by the petitioner, counsel for the respondent made the following concession:

The MEMBER: What I wanted to find out was, is there any controversy as to whether these books were closed on a fiscal year basis, June 30?

Mr. GWINN: I would not say there is a controversy about that. I concede that the books were ruled down, and that the books were closed as at June 30 of each year * * *.

That the basis of the railroad company's annual accounting period for many years prior and subsequent to 1921 was the fiscal year ending June 30, we think, is clearly established by the evidence, as well as conceded by the respondent, and we so find the fact to be.

However, the respondent contends that, after having made its income tax return for 1921 on the basis of the calendar year, the railroad company could not thereafter change to the basis of a fiscal year without first having obtained from the Commissioner permission to make such change. The respondent further contends that

the railroad company's books of account were so kept that the income could be correctly and readily determined at the end of the calendar year, as well as at June 30, and that, since the return was made on the basis of the calendar year, the deficiency should be redetermined on that basis.

As we view the case, respondent's position is untenable. If the basis of the railroad company's annual accounting period had been the calendar year and on that basis it had properly made its annual tax returns, and subsequent to 1921 had changed to the basis of a fiscal year, without permission from the Commissioner, an entirely different question would be presented. But here we have no question of changing the basis of the annual accounting period. The railroad company did not request permission to make such a change, did not in fact make any change in its accounting period, and so far as the record discloses had no desire to change its basis, prior to 1929. The issue is whether or not the respondent, without a request for a change of basis, has legal authority to determine the tax liability of the railroad company on the basis of a calendar year where the regularly established and long continued basis of its annual accounting period was a fiscal year ending June 30, and its tax returns were filed on the basis of the calendar year.

The pertinent provisions of the Revenue Act of 1921 read as follows:

[SEC. 212.] (b) The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made upon such basis and in such manner as in the opinion of the Commissioner does clearly reflect the income. If the taxpayer's annual accounting period is other than a fiscal year * * * or if the taxpayer has no annual accounting period or does not keep books, the net income shall be computed upon the basis of the calendar year.

(c) If the taxpayer changes his accounting period from fiscal year to calendar year, from calendar year to fiscal year, or from one fiscal year to another, the net income shall, with the approval of the Commissioner, be computed on the basis of such new accounting period. * * *

[SEC. 232.] That in the case of a corporation * * * the net income shall be computed on the same basis as is provided in subdivision (b) of section 212 * * *.

The respondent makes no contention that the method of accounting regularly employed by the taxpayer in this case did not correctly reflect the income, nor that the case comes within any of the other exceptions mentioned in the statute, and such contention could not be sustained by the facts of record. We must, therefore, consider the issue presented here in the light of the first provision of section 212 (b), *supra*, that "the net income shall be computed upon the

basis of the taxpayer's annual accounting period (fiscal year or calendar year as the case may be)." In this connection we may point out that subdivision (c) of said section vests discretionary power in the Commissioner to authorize the computation of net income on the basis of a new accounting period only in the case where the taxpayer changes his accounting period. Here the taxpayer did not change its accounting period, and the sole question is what effect should be given to that provision of subdivision (b).

In our opinion the statute is mandatory, and, where none of the exceptions applies, as in the instant case, there is no discretion vested in the Commissioner or any one else to compute net income upon any basis other than the taxpayer's annual accounting period. We think it is immaterial that the tax returns were improperly and without authority made upon a different basis. The statute does not require that the net income shall be computed upon the basis of the return, if the return is made upon a basis other than the annual accounting period of the taxpayer. The plain and explicit provision of the statute must be given effect.

In *Great West Printing Co.*, 22 B. T. A. 346, we had before us substantially the same question as is involved here, except that the positions of the respective parties were reversed. The petitioner in that case closed its books and determined its income on the basis of a fiscal year ending May 31. Its tax returns were filed on the basis of calendar years. The respondent disregarded the calendar year return and determined from the books a deficiency in tax for the fiscal year ended May 31, 1921. We approved the respondent's determination, saying:

Clearly the returns filed by the petitioner on the calendar year basis were not in accordance with the statute and they can have no effect upon the issue before us. * * * The deficiency before us has been determined from the books and for the fiscal year exactly as provided in sections 232 and 212 (b) of the Revenue Act of 1921. These facts are conclusive of the issue. Under the statute the determination must be approved.

In the printing company case, the petitioner contended, as the respondent contends here, that its books correctly reflected the income for the calendar year 1921, and its return having been made on the basis of the calendar year, the deficiency should be redetermined on the same basis. In affirming our decision, the United States Circuit Court of Appeals for the Eighth Circuit, at 60 Fed. (2d) 749, after quoting section 212 (b) of the Revenue Act of 1921, said:

Following the statutory requirements of the above quotation, it is clear that if this petitioner had an annual accounting period, either fiscal or calendar, and its method of accounting was such that this period clearly reflected the income, that period is mandatory. * * *

From the above outline of the accounting methods of petitioner, it is clear that not only is there substantial evidence to sustain the conclusion of the Commissioner and the Board of Tax Appeals to the effect that the books were kept

on an annual basis ending May thirty-first, 1921, but such conclusion is compelled from the evidence.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Also, petitioner argues that its books were so kept as to permit a showing of income at the end of any month and, therefore, the calendar year was mandatory for tax purposes under the statutory provision that where the taxpayer " has no annual accounting period　\*　\*　\*　the net income shall be computed on the basis of the calendar year ". The search here is not for what could have been done, but for what was done, and it is clear that petitioner did have an annual accounting period ending May thirty-first, which clearly reflected annual income.　\*　\*　\*

Also it is argued that the books clearly reflected the income for the calendar year 1921, and the tax return was made on that basis. Since determination of the income depended, in part, upon the inventory as of December 31, 1920 (or January 1, 1921),　\*　\*　\*　there is some question as to the books clearly reflecting the income for the calendar year 1921, but, be that as it may, the test is the year (fiscal or calendar) actually used in the business and shown in the books, and not the possibility of the use of some other annual period.

Considering all the evidence, we are convinced that the petitioners kept their books and records on a fiscal year basis and, under the statute, were not only permitted, but required, to report their income for taxation on that basis.

In his brief the respondent stated the following proposition and argument:

Even though the taxpayer had a legal right to file its return on a fiscal year basis in 1921, it is now estopped to assert such right.　\*　\*　\*　A taxpayer can not change at will from a fiscal year to a calendar year or vice versa, as may appear advantageous to him　\*　\*　\*. Consequently the law and regulations provide the manner and means of making such changes.

In support of his estoppel argument, the Commissioner relies upon the principle of estoppel and cites the case of *Greylock Mills* v. *Blair*, 293 Fed. 846. We do not think that this case is an authority for his position. The court did not discuss the question of estoppel.

In *Howard Sheep Co.*, 1 B. T. A. 966, we stated the essential elements of estoppel as follows:

The doctrine of *estoppel in pais* is a rule of equity that the courts are reluctant to apply. In order to be allowed to invoke the doctrine one must show: (1) That there has been a false representation concerning material facts; (2) that the representation was made with the knowledge of the facts; (3) that the party to whom it was made must have been permissibly ignorant of the truth of the matter; (4) that the representation must have been made with the intention that it should be acted upon; and (5) it must have been acted upon to the damage of the party acting.

The question of estoppel was not raised in the pleadings and the petitioners were afforded no opportunity to rebut this issue or argument. There has heretofore been no suggestion or intimation that this question was involved in this proceeding. The argument is made in a brief not available to petitioners, there having been no exchange of briefs, upon the theory that the issues were understood

by both parties. No evidence was directed to the question by either side. The defense of estoppel must rest upon facts and not upon argument alone. In the first place, there is no evidence to indicate that there has been a false representation concerning material facts. There is no evidence that the return stated that the taxpayer's books and records were upon the fiscal year basis or a calendar year basis. While the filing of the return might indicate that they were kept upon the calendar year basis, there is no evidence that the petitioner represented such fact as a fact to the respondent. It may well be that the petitioner filed its return upon the calendar year basis because of a misunderstanding of the law. Certainly misconstruction of the law, and action based upon a legal theory rather than upon a factual theory, would not constitute a false representation concerning a material fact. Nor does the evidence disclose whether or not the respondent was permissibly ignorant of the basis upon which the books and records were kept. They had been kept on a fiscal year basis for more than forty years. Where the law required a return to be filed upon a fiscal year basis because the records were kept upon that basis, the filing of the return upon the calendar year basis might well have been known by the respondent to have been erroneous, within such a period of time as to enable him to act accordingly so that he would not have been prejudiced thereby. There is no evidence of this in the record. It might well be presumed that when the Commissioner sent out his deficiency notice he must have ascertained the facts upon which he acted, and must have known or was in a position to have known whether the return was required to be on the fiscal or the calendar year basis. There is no evidence that the Commissioner within the statutory period did not have ample opportunity not only to permit, but to require, the return to be filed upon a proper basis. Under the facts he should have required fiscal year returns.

Where a return was required to be filed on a fiscal year basis and was actually filed on a calendar year basis, the statute of limitations does not begin to run until a subsequent return is filed in which all of the income for the fiscal year is included. *Paso Robles Mercantile Co.*, 12 B. T. A. 750; 35 Fed. (2d) 1012. Further, there is no evidence in this record that the respondent has acted to his damage by the action or any implied representations, or silence, or conduct on the part of the petitioners. In any event, in order to sustain the theory of estoppel as advanced by the respondent, it is necessary that these essential facts be shown by evidence. There is no presumption that the facts are true.

The respondent, instead of relying upon any representations or any conduct of the petitioners to his damage or prejudice, has relied upon the legal principle that the calendar year return, instead of

being erroneous, was proper. He contends that, since the petitioners could have ascertained their income for the purpose of the return at the end of any monthly period, they properly reported their income upon the calendar year basis. This is a legal question. For all that the record discloses the Commissioner had ascertained all of the facts relating to the method of keeping books and with respect to the computation of income and all other material facts at some unascertained time when he could have acted upon the proper basis for returns, even if he can not do so now. However, in any event, it is not shown by the evidence that the Commissioner is in a different position now than he would have been in if the petitioners had in the first place reported their income on the fiscal year basis. The fact is that the petitioners had less taxable income upon a fiscal year basis for the fiscal year here involved because they had losses in the portion of another calendar year which fell in the fiscal year, but it is not shown that any taxable income properly to be reported on a fiscal year basis escaped taxation. It is agreed that on a fiscal year basis there would be no deficiency. That there would be a greater tax upon a calendar year than on a fiscal year basis is beyond the pale of the controversy.

Following the above decisions in *Great West Printing Co., supra*, we hold that the respondent was not authorized in this case to compute the net income, or to determine the consequent tax liability, of the railroad company on the basis of the calendar year 1921, and that there is no deficiency for that year. Cf. *American Hide & Leather Co.* v. *United States*, 284 U. S. 598.

> *Judgment of no deficiency for the calendar year 1921 will be entered.*